# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| In re: | ) | Honorable Karen A. Overstreet |
| | ) | Case No. 09-21610-KAO |
| WELLINGTON PARK POINTE LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | DEBTOR'S OBJECTION TO REGAL |
| | ) | FINANCIAL BANK'S MOTION FOR |
| | ) | RELIEF FROM THE AUTOMATIC |
| | ) | STAY |

Debtor Wellington Park Pointe LLC (the "Debtor"), through its attorneys, submits the following objection to the Motion for Relief from the Automatic Stay filed by Regal Financial Bank ("Regal"). Debtor's Objection is supported by the Declaration of Ronald Slater, attached as Exhibit A. Regal's Motion should be denied as (1) Regal has failed to meet its burden to show that there is no equity in the property; (2) the property is necessary to any reorganization of the Debtor; and (3) there is no "cause" to lift the stay. In the alternative, the Court should order an evidentiary hearing to adjudicate disputed issues of fact bearing on Regal's Motion.

**BACKGROUND**

1. The Debtor's estate in this matter consists of real property (the "Property") located at Southeast Evans Street in Issaquah, Washington. The Debtor's estate consists of the Property and is "single asset real estate" as defined in 11 U.S.C. §101(51B).

2. Regal has asserted a lien on the Property in the amount of $12,361,407.17, which it now asserts totals $12,587,619.54. The lien is secured by a deed of trust. Stanford Park Pointe, LLC, a Nevada Limited Liability Company, holds a junior lien on the Property, secured by a deed of trust, in the amount of $500,000. Park Real Estate Investment, LLC, a

Nevada Limited Liability Company, also holds a junior lien on the Property, secured by a deed of trust, in the amount of $1,100,000.

3. Regal commissioned an appraisal of the Property in July, 2009. This appraisal was performed by Strickland, Heischman & Hoss, Inc., licensed Washington real estate appraisers with MAI certifications. Strickland's appraisal placed the "value as of the date of inspection" (July 3, 2009) at $14,630,000. The appraisal went on to give a "prospective value" of the property assuming that preliminary plat approval for residential development was granted. The "prospective value" as of December 2009, assuming preliminary plat approval, is listed at $16,035,000. A copy of Strickland's appraisal report is attached as Exhibit A-1.

4. Regal commissioned another appraisal of the Property in November, 2009, from a different appraisal company, Private Valuations, Inc. ("PVI"), licensed Washington appraisers with MAI certifications. The PVI appraisal valued the Property at "$4,500,000 to $5,000,000" (Regal Motion for Relief from Stay at 4).

**I.      Regal is Not Entitled to Have the Automatic Stay Lifted Under Either Subsection of 11 U.S.C. §362(d)(2)**

5. Regal argues that the stay should be lifted pursuant to 11 U.S.C. §362(d)(2) because: (a) the Debtor has no equity in the Property, and; (b) the Property is not necessary to an effective reorganization. The Court must find both these standards to be met in order for the stay to be lifted. As shown below, the "facts" cited by Regal in support of its contentions are primarily based on the PVI Appraisal, which is in turn tainted by inaccuracies, mischaracterizations, and a fundamental misunderstanding of the development process at the Property. This Court should deny Regal's motion on this basis, or, in the

2

alternative, schedule an evidentiary hearing to assess the credibility of Regal's factual assertions.

### A. The PVI Appraisal is Fundamentally Flawed and Does Not Establish A Lack of Equity in the Property

6. Under 11 U.S.C. §362(g), Regal has the burden of proof to demonstrate that there is no equity in the Property. In its attempt to meet this burden, Regal relies entirely on the PVI Appraisal valuing the Property at "between $4,500,000 and $5,000,000" (Regal Motion for Relief from Stay at 5-6). However, as demonstrated in the Declaration of Ronald Slater, attached as Exhibit A hereto, the PVI Appraisal is based on mischaracterizations and inaccuracies regarding the physical factors and approval requirements associated with the remaining development work at the Property, and largely ignores the fact that the City of Issaquah, after years of negotiation and review, approved the Debtor's plans for development in the Final Environmental Impact Statement ("FEIS") issued for the Property on October 30, 2009. A copy of the FEIS Summary is attached as Exhibit A-2; the entire FEIS may be viewed on line at "www.ci.issaquah.wa.us/Page.asp?NavID=1899."

7. The PVI Appraisal reveals a fundamental misunderstanding of the Debtor's development plans that pervades the entire analysis in the report. PVI asserts that the Debtor is "not a proponent of the Full Build option" for the Property and is seeking only to develop the site in accordance with the "Lower Bench Low Impact Development option in the EIS," and that significant risk and feasibility issues stem from development in that configuration. PVI Valuation at 11. PVI ignores the plain language of the FEIS, in which two alternatives were approved for development. The Debtor's initial "preferred alternative" was a "full-build" approach consisting of development of units in both the "upper bench" and "lower bench" of the Property. Over the course of discussions with the City of Issaquah, the

development of only the "lower bench" as a "lower bench low impact development" became the preferred alternative but only on the condition that the "upper bench" be purchased by the City. If the upper bench is not acquired from the developer, the FEIS clearly states that the "full-build low impact development" is the developer's preferred alternative. Slater Dec. at ¶6. PVI's threshold failure to understand the potential scope of the development places the validity of its appraisal into serious question.

8. Regal argues, relying on the PVI Appraisal, that multiple factors "make the current development of the Property an extremely high risk." Regal Motion for Relief from Stay at 6. The first factor cited is a lack of "preliminary plat approval or binding development agreement." As noted in the Slater Declaration, the applications for both plat approval and the development agreement have already been submitted in light of the City's approval of the development alternatives in the FEIS. Slater Dec. at ¶13.

9. Regal also claims, relying on PVI, that another hurdle to development is a further variance required from the City for "clustered zoning." This is false—clustered housing is a permitted use under the Property's zoning classification of "Single Family Small Lot" as long as a development agreement is approved. Slater Dec. at ¶13.

10. Regal (through PVI) asserts that "physical factors" will make development of the Property difficult or expensive; to the contrary, the plans for stormwater treatment, flood prevention, building on the site's topography, and construction of a water tower have already been taken into account in the proposed development and approved by the City in the FEIS. Slater Dec. at ¶10-11.

11. Regal and PVI cite the presence of an "active shooting range" adjacent to the site as an impediment to development. A noise mitigation expert, JGL Acoustics, Inc., was

4

engaged to study the effect of the shooting range as part of the EIS process, and designed a sound wall for the north boundary of the property that has already been reviewed and approved as part of the FEIS. Slater Dec. at ¶9.

12. Regal cites "poor access to the Property through downtown Issaquah which suffers from extreme congestion in peak hours," citing PVI's Appraisal which describes the traffic concurrency contained in the FEIS as "currently expired." PVI Appraisal at 8. As noted in the Slater Declaration, the traffic concurrency approved through the FEIS (appended to the PVI Appraisal, A-24) process has not expired and is sufficient to serve the development of either configuration reviewed and approved by the City in the FEIS. Slater Dec. at ¶7.

13. The "timing of economic recovery" is also cited by Regal and PVI as a risk to development of the Property. While there is no argument that the overall economic climate plays a role in the marketability of residential units, development is going forward in the area, indicating a demand for housing exists to be serviced by this project. Slater Dec. at ¶12.

14. Finally, Regal notes PVI's conclusion that residential development of the Property "may not be its highest and best use" and that the most valuable use of the Property may be obtained by dedicating the Property to the public "to take advantage of the transferable development rights incentives being offered by the City of Issaquah." Regal Motion at 7. Such "incentives" have been created by Regal and/or PVI out of whole cloth. The Debtor's Development Manager, who has been involved in all phases of the development of the Property and negotiations with the City, is aware of no "incentives" of

any kind being offered, or any "incentive package currently being fielded" by the City. Slater Dec. at ¶14.

16. 15. The PVI Appraisal amounts to little more than an attempt to artificially drive down the value of the Property through unsupported and incorrect assumptions regarding the status and feasibility of further development. It is inconclusive; the transmittal letter appended to the PVI Appraisal concedes that PVI cannot "make a final determination of highest and best use." Slater Dec. at ¶15. It does nothing to support Regal's argument that the Debtor has no equity in the Property.

16. Not content with its reliance on the fundamentally inaccurate PVI Appraisal, Regal also argues that one of the Debtor's guarantors, International Investment Syndications Ltd., "recognizes that there is no equity in the property" because during settlement negotiations it offered to give Regal a deed in lieu of foreclosure "in settlement of its guarantee obligations." Regal Motion at 6. To begin with, settlement offers such as those referenced by Regal are routinely barred from admission into evidence under F.R. Evid. 408, which prohibits the very tactic attempted here—the use of a settlement offer as "proof" of the amount of a disputed claim. Moreover, even if the settlement offers could be used at trial, there is nothing to suggest the Debtor would be bound by any representation made by a guarantor or any third party. Regal's disingenuous attempt to cite evidence of prior settlement offers may be ignored as both inadmissible and irrelevant.

17. In addition to the fallacious PVI valuation, other appraisers that Regal itself commissioned concluded as recently as July of this year that the value of the Property was greater than the combined amount of all the secured claims. See Strickland Appraisal, Exhibit A-1.

18. The inescapable conclusion is that Regal cannot meet its burden to show that there is no equity in the Property and its motion for relief from the stay should be denied. In the alternative, the Court should continue Regal's motion to allow an evidentiary hearing to determine the credibility of Regal's "factual" assertions and the contravening facts provided by the Debtor.

### B. The Property is Necessary to the Debtor's Reorganization

19. As Regal has not met its burden to show that there is no equity in the Property, the inquiry under Section 362(d)(2) need go no further. However, Regal's argument that the Property is unnecessary to the Debtor's reorganization is equally unavailing. Regal's contention is essentially that hurdles to development at the Property make its completion financially infeasible (Regal's Motion at 6-7). Yet this argument is based on the same faulty conclusions from the PVI Appraisal that doomed its "lack of equity" argument.

20. Regal's statement that the FEIS "permits development on only 14.1 acres of the roughly 102-acre site" is false as it ignores the "full-build low impact alternative" approved by the City. Slater Dec. at ¶6. Its argument that the "current zoning does not allow the development of either of the two options discussed in the EIS" is also false, as the property is currently zoned to allow "cluster housing" under a Single Family-Small Lot zoning classification. Slater Dec. at ¶13. The statement that the "City of Issaquah and local residents oppose the plan" is not only unsupported, but ignores the fact that the City approved both the "low-build low impact" and "full-build low impact" alternative in the FEIS. Slater Dec. at ¶6.

7

21. Under 11 U.S.C. §362(d)(2)(B), the question before the Court is not whether the Debtor's reorganization plan will ultimately be confirmed, but whether there is a reasonable possibility it will be confirmed within a reasonable time. *In re Bonner Mall Partnership,* 2 F.3d 899, 918 (9th Cir. 1993). Here, the Debtor will file a reorganization plan based on Debtor-in-Possession funding to continue the development of the Property in accordance with the terms approved in the FEIS. The continued development of the Property, the Debtor's sole asset, is absolutely necessary to the reorganization plan.

## II. There is No "Cause" To Lift the Automatic Stay

22. Regal also attempts to argue that there is "cause" to lift the stay under the separate provisions of 11 U.S.C. §362(d)(1), as it claims that there is no "adequate protection" for Regal's secured interest in the Property. Regal Motion at 8.

23. As is the case with its other arguments, Regal's "cause" argument is defeated by its reliance on the PVI Appraisal. Regal states "the Property is the primary asset in the bankruptcy estate, has an uncertain market value, and it appears from the current appraisals that Regal will be far from being made whole." Regal Motion at 8. The use of the terms "uncertain" market value and "appearance" that it will not be repaid reveal that Regal cannot support its "cause" argument with undisputed facts. As demonstrated above, Regal cannot rely on the PVI Appraisal to establish the value of the Property, either in the context of determining whether there is equity in the Property under Section 362(d)(2)(A) or in determining whether Regal is adequately protected under Section 362(d)(1).

24. Regal argues that the Debtor has no cash flow or assets to provide Regal with adequate protection payments. However, courts have also found adequate protection to exist in the form of an "equity cushion" where the property in question has a greater value than the

secured claim of the creditor seeking relief from the stay. *In re Mellor,* 734 F.2d 1396, 1400 (9th Cir. 1984). Given that the PVI Appraisal provides no legitimate valuation, the Court cannot rely upon that appraisal to determine that Regal is not adequately protected by way of an equity cushion above its secured claim. Notably, the July 2009 Strickland Appraisal commissioned by Regal reveals a property value—even at the lower figure of $14.635 million—that exceeds Regal's secured claim of $12,587,619.54. Only the amount of Regal's claim, and not those of other lienholders, is considered in the determination of whether Regal is adequately protected under Section 362(d)(1). *In re Mellor,* 734 F.3d at 1400.

25. Regal's motion to lift the automatic stay for "cause" under Section 362(d)(1) should be denied, or in the alternative, continued to permit an evidentiary hearing on the disputed facts relating to the value of the Property.

**III.      In the Event the Motion is Not Denied, An Evidentiary Hearing is Required to Determine Disputed Facts Regarding the Property's Value**

26. If Regal's Motion is not denied, Debtor, in the alternative, requests that the Court schedule an evidentiary hearing pursuant to the provisions of Federal Bankruptcy Rule 9014. Under Rule 4001(a)(1) of the Federal Rules of Bankruptcy Procedure, a motion for relief from the automatic stay is a "contested matter" subject to the procedures of Rule 9014, which, in turn, allows discovery and the testimony of witnesses in the same manner as testimony in adversary proceedings. Federal Bankruptcy Rule 9014(c-d).

27. Given the wide disparity in the results of Regal's own appraisals, there is clearly no definitively established value of the Property that can support Regal's argument that the Property has no equity or that the Debtor cannot provide Regal with adequate protection. The Debtor is entitled to take discovery pursuant to Rule 7026(b) in advance of the hearing contemplated by Rule 9014. Here, in the event the Regal's Motion is not denied,

the Debtor is entitled to seek discovery relating to the factual bases for Regal's commissioned appraisals and to examine witnesses with respect to disputed material factual issues in accordance with Rule 9014(d).

**CONCLUSION**

Regal's Motion for Relief from the Automatic Stay should be denied. In the alternative, this Court should schedule an evidentiary hearing pursuant to Rule 9014 and permit discovery on the disputed issues surrounding the value of the Property in question.

Dated: December 11, 2009

WELLINGTON PARK POINTE LLC

By: /s/ Kevin J. O'Brien

Neal L. Wolf (ARDC #6186361)
Cheryl Tama Oblander (ARDC #6199464)
Kevin J. O'Brien (ARDC #6193882)
Karen M. Borg (ARDC #6228879)
Butler Rubin Saltarelli & Boyd LLP
70 West Madison, Suite 1800
Chicago, Illinois 60602

-and-

Gayle E. Bush, WSBA #01738
Christine M. Tobin, WSBA #27628
Bush Strout & Kornfeld
5000 Two Union Square
601 Union Street
Seattle, Washington 98101

452955v1