Diana K. Carey, WSBA #16239
Michael M. Feinberg, WSBA #11811
Karr Tuttle Campbell
1201 Third Ave., Suite 2900
Seattle, WA 98101
Telephone: (206) 224-8888
Fax: (206) 682-7100

Attorneys for Regal Financial Bank

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

In Re:                                              )
                                                    )   NO.    09-21610-KAO
WELLINGTON PARK POINTE LLC,                          )
                                                    )   REGAL FINANCIAL BANK'S REPLY IN
                            Debtor.                  )   SUPPORT OF MOTION FOR RELIEF
_____               )   FROM THE AUTOMATIC STAY

### INTRODUCTION

Despite the Debtor's valiant efforts to breathe life into this case, a critical evaluation of its vital signs shows that it is DOA.  The Debtor's argument against granting Regal Bank relief from the automatic stay is based entirely on an appraisal by Donald Heischman of Strickland, Heischman & Hoss, Inc., dated as of July 15, 2009 ("Heischman Appraisal") and Ronald Slater's criticism of the appraisal done by Private Valuations, Inc. ("PVI") upon which Regal's motion is based.  The Debtor's argument is essentially that the PVI Appraisal has no validity, and the court should look solely to the Heischman Appraisal.

REGAL FINANCIAL BANK'S REPLY IN SUPPORT OF
MOTION FOR RELIEF FROM STAY - 1
#734011 v1 / 32389-004

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Regal Bank engaged Richard Briscoe of GVA Kidder Matthews to perform desk reviews of both the Heischman Appraisal and the PVI Appraisal. See Declaration of Richard J. Briscoe. Mr. Briscoe found flaws in the assumptions and the analysis in both appraisals. However, the Heischman Appraisal contains a serious and obvious mathematical error. Even without correction of this mathematical error, and even if one ignores all of the questionable and unsupported assumptions that Briscoe found in the Heischman Appraisal, the Debtor lacks equity in the property. When these mathematical errors are corrected, the Heischman Appraisal shows this project is more than $2,800,000 under water.

## A. The Heischman Appraisal Overstates the Value of the Property.

The basic methodology of the Heischman Appraisal is to determine a hypothetical future value for each of phase I and phase II of the project based on sales of comparable lots, the estimated costs of completing the required infrastructure improvements, and an estimated absorption rate. The Heischman Appraisal determines a value of the two phases using a discounted cash flow back to the completion date for each phase: July 2011 in the case of Phase I, and July 2012 for Phase II. It then discounts each cash flow back to December 2009, the date it assumes that preliminary plat approval will be obtained, to arrive at a prospective value with preliminary plat approval as of December 2009. Estimated costs to obtain plat approval are then subtracted from the December 2009 value, and this subtotal is discounted back to the date of the appraisal to arrive at a value of the plat, assuming it had preliminary plat approval on the date of the appraisal.

The mathematical errors in the Heischman Appraisal are in the formulas on page 87 and page 88. It uses an "n" value of 24 for the number of months between July 2012 and

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

December 2009 and an "n" value of 12 for the number of months between July 2011 and December 2009, when the actual number of months are 30 and 18, respectively. This mathematical error causes an overstatement of the appraised value by almost $2,000,000. Briscoe Decl., ¶ 4.

The Heischman Appraisal is also based on the following self described "Extraordinary Assumption:"

> As of the date of appraisal, the developer of the subject property has not obtained preliminary plat approval for development of the site with single-family residential lots. As preliminary plat approval has not been obtained as of the date of appraisal, it is an extraordinary assumption of this report that final plat approval for the development of single-family residential lots to be developed with residences and multi-family land will be obtained and the site will be developed "As Proposed". If this assumption proves incorrect, the value conclusions herein may require modification.

Heischman Appraisal, p. 101.

However, a number of critical "as proposed" assumptions upon which the Heischman Appraisal is based have proved untrue based on the passage of time or on testimony of the Debtor in this case.

1.  The Heischman Appraisal is based on the assumption the Debtor would receive preliminary plat approval by December 2009. Heischman Appraisal, p. 1. The Debtor does not have preliminary plat approval. Ronald Slater testified at the first meeting of creditors on December 8, 2009, that preliminary plat approval would take another 12 to 18 months. See Exhibit to Declaration of Charyl D. Axelson.

2.  The Heischman Appraisal is based on the assumption that the remaining costs for engineering and other fees to obtain preliminary plat approval would be

REGAL FINANCIAL BANK'S REPLY IN SUPPORT OF
MOTION FOR RELIEF FROM STAY - 3
#734011 v1 / 32389-004

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

$40,000.  Heischman Appraisal, p. 88.  The budget the Debtor filed for the Case Management Conference estimates it will incur $222,848 in these types of fees just for the first six months of the 12 to 18 month process.  Mr. Briscoe opines that the total cost for engineering and other fees will be more than three times the amount the Debtor estimates for the first six months.  Briscoe Decl. ¶ 6.

3. The Heischman Appraisal assumes that the Debtor would complete all improvements for Phase I by July 2011, and the improvements for Phase II by July 2012.  Heischman Appraisal, page 1.  Based on the time Mr. Slater testified it will take to obtain preliminary plat approval, the Debtor will not be able to complete the improvements by the dates indicated in the appraisal.

The failure of these critical assumptions means the property is worth less than stated in the Heischman Appraisal.  A downward adjustment of the appraised value is required because the expenses to obtain plat approval are considerably greater than estimated and the discounting period is longer.  Additionally, as noted in Mr. Briscoe's desk review, the Heischman Appraisal has a number of other deficiencies, plus it is based on a number of unsupported assumptions.

**B.  Regal Bank is Entitled to Relief from Stay.**

1.  <u>There is No Equity in the Property</u>

The Debtor's argument that there is equity in the property is based entirely on the Heischman Appraisal.  Even if we take the Heischman Appraisal at face value with all its erroneous assumptions and mathematical errors, there is no equity in the property.  The

REGAL FINANCIAL BANK'S REPLY IN SUPPORT OF
MOTION FOR RELIEF FROM STAY - 4
#734011 v1 / 32389-004

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

Heischman Appraisal values the property "as is" on the date of inspection, assuming preliminary plat approval, at $14,600,000. After subtracting 10% for costs of sale and the value of the liens against the property there is a negative equity of $1,117,000.

| | |
|---|---|
| Value of Property as of Date of Inspection | $ 14,600,000 |
| Costs of Sale | (1,460,000) |
| Property Taxes | (57,000) |
| Regal 1st Deed of Trust | (12,600,000) |
| Junior Deeds of Trust | (1,600,000) |
| Net Equity | ($1,117,000.00) |

If the proper discounting periods are substituted in the formulas used in the Heischman Appraisal, the corrected value of the Property on the date of the appraisal is $12,683,935, resulting in a negative of more than $2,800,000, as follows:

| | |
|---|---|
| Corrected Value of Property as of Date of Inspection | $ 12,683,935 |
| Costs of Sale | (1,268,394) |
| Property Taxes | (57,000) |
| Regal 1st Deed of Trust | (12,600,000) |
| Junior Deeds of Trust | (1,600,000) |
| Net Equity | ($2,841,459.00) |

Heischman assumes that it will only take $40,000 in engineering fees to obtain preliminary plat approval. As noted above, in the financial reports filed for the Case Management Conference, the debtor budgeted $222,848 for such expenses over the six-month period of the report. The total amount of engineering and other fees to obtain preliminary plat approval will no doubt be considerably higher (Mr. Briscoe opines at least three times higher). If the Debtor's budget figures are used instead of the $40,000 assumed costs, this would put the project more than $3,000,000 under water.

Mr. Slater testified that the Debtor is still 12 to 18 months away from preliminary plat approval and thus the infrastructure improvements will not be completed by the date assumed

REGAL FINANCIAL BANK'S REPLY IN SUPPORT OF
MOTION FOR RELIEF FROM STAY - 5
#734011 v1 / 32389-004

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

in the Heischman Appraisal. This longer discounting period would have a further negative impact on the value of the property.

In addition, Mr. Briscoe is his desk review identified a number of assumptions in the Heischman Appraisal that are unsupported which cause the appraisal to overstate the value of the property. He also found some significant omissions. For instance, the Heischman Appraisal assumes an absorption rate that is more than four times the existing rate and unsupported by historical data. Mr. Briscoe also noted some of the same deficiencies that the Debtor identifies regarding the PVI Appraisal, but on the whole he agrees with its conclusion that the topography and steep slope of the property plus the need for a water tower and retention facilities for storm water retention will involve considerable expense, and that these pose significant development risks that are totally ignored in the Heischman Appraisal. All of the comparables used by Heischman both for value and cost estimates involve essentially flat subdivisions and the Heischman Appraisal totally fails to account or adjust for the "special design and construction methods" the EIS indicates will be necessary for construction in the steep slope hazard areas identified in the report.

The value of the property most likely lies somewhere between the Heischman Appraisal and the PVI Appraisal. The Court, however, does not need to resolve any of the factual issues that distinguish the various appraisals. The inescapable truth is that even the Heischman Appraisal indicates the Debtor lacks equity in the property. The debtor has requested that the court set this matter over for a final an evidentiary hearing as permitted by § 362(e)(1). That section only permits the court to continue the stay pending final hearing "if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

of the final hearing." Both appraisals in the record show the debtor lacks equity in the Property. There is no evidence in the record before the Court that indicates the Debtor has any equity in the property and certainly no evidence that would permit the court to conclude the Debtor will likely prevail. No amount of testimony is going to change mathematical facts or alter how the number of months between two dates are counted. Moreover, even if all of the unsupported assumptions in the Heischman Appraisal are accepted (some of which we now know to be demonstrably untrue), and its obvious mathematical errors ignored, after subtracting costs of sale and junior liens, the Debtor's equity in the property is negative by more than $1,117,000. Accordingly, Regal is entitled to relief from automatic stay.

    2. <u>Regal Bank is Not Adequately Protected.</u>

    The Debtor has the burden of proving adequate protection. § 362 (g)(2). The Debtor claims that an "equity cushion" adequately protects Regal and points to the Heischman Appraisal as establishing that equity cushion. In looking at whether Regal is adequately protected, junior liens are not considered. The Heischman appraisal demonstrates there is no equity cushion. Once the mathematical error in discounting is corrected, the appraisal indicates the value of the property ($12,683,935) is no more than the balance presently owed Regal, and if normal costs of sale are deducted, the property is worth more than a million dollars less than the balance presently due Regal.

    The Debtor has failed to demonstrate that Regal Bank is adequately protected by any equity cushion in the property.

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100

## CONCLUSION

Neither of the two appraisals before the court indicates that the Debtor has equity in the property. Indeed, according to the higher Heischman Appraisal, the property is not worth as much as the Debtor owes to Regal Bank. Accordingly, Regal Bank is entitled to an order granting it relief from the automatic stay.

DATED this 15th day of December 2009.

/s/ Michael M. Feinberg

_____

Michael M. Feinberg, WSBA #11811
Diana K. Carey, WSBA #16239
Of Karr Tuttle Campbell
Attorneys for Regal Financial Bank

*Law Offices*
KARR TUTTLE CAMPBELL
*A Professional Service Corporation*
1201 Third Avenue, Suite 2900, Seattle, Washington 98101-3028
Telephone (206) 223-1313, Facsimile (206) 682-7100